USDC SCAN INDEX SHEET



LINEUP

GB

3

96629

CV

1

CMP.

TULP

CARTWRIGHT WALKER

Howard Bennett Hellen (State Bar No. 140640)
LAW OFFICES OF HOWARD BENNETT HELLEN
3111 Camino Del Rio North, Suite # 400
San Diego, California 92108
(619) 528-2330

Attorney for Plaintiff ORIEN L. TULP



FILED

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

ORIEN L. TULP,

      Plaintiff,

    v.

CARTWRIGHT & WALKER
SECURITIES, INC., a
California Corporation;
ELLIOTT FISHER, an
Individual; EVERETT SCOVILLE
WALKER, JR. aka SCOVILLE
WALKER; EUGENE TODD aka
GENE TODD, an Individual;
RICHARD GAVSNEY, an
Individual; EUGENE FLAXMAN,
aka EUGENE ROSENFELD, aka
EUGENE ROSEN, an Individual;
an Individual; STELLA BELLA
COFFEE COMPANY, INC., a
California Corporation; STELLA
BELLA COFFEE COMPANY, a
California Partnership,
STELLA BELLA COFFEE COMPANY,
a California Joint Venture;
STELLA BELLA COFFEE COMPANY,
a California Sole
Proprietorship;
FLETCHER & FARADAY, a New
York Corporation; FLETCHER
& FARADAY, a New York
Partnership; FLETCHER &
FARADAY, a New York
Joint Venture; Z-3 CAPITAL,
INC., a California Corporation;)

CIVIL ACTION NO 96 - 629 J RBB

COMPLAINT TO RECOVER
DAMAGES FOR
VIOLATIONS OF
SECTIONS 5 AND 12(1)
OF THE SECURITIES ACT OF
1933; SECTION 12(2) OF
THE SECURITIES ACT OF
1933; SECTIONS 17 (a)
OF THE SECURITIES ACT
OF 1933; SECTIONS 10(b)
AND 10(b)(5) OF THE
SECURITIES EXCHANGE ACT
OF 1934; FOR VIOLATIONS
OF SECTION 25400(d) OF
THE CALIFORNIA
CORPORATIONS CODE AND OF
SECTION 25401 OF THE
CALIFORNIA CORPORATIONS
CODE; BREACH OF CONTRACT;
BREACH OF IMPLIED
COVENANT OF GOOD FAITH
AND FAIR DEALING; COMMON
COUNT (MONEY HAD AND
RECEIVED); FRAUD; DECEIT;
NEGLIGENT
MISREPRESENTATION; and
BREACH OF FIDUCIARY DUTY

1

Z-3 CAPITAL, a California )
Partnership; Z-3 CAPITAL, a )
California Joint Venture; )
Z-3 CAPITAL, a California )
Sole Proprietorship; and )
DOES 1-50, Inclusive, )
                                    )
        Defendants. )
_____ )       **JURY TRIAL DEMANDED**

## COMPLAINT

ORIEN L. TULP, an Individual (hereinafter "PLAINTIFF" or "DR. TULP"), alleges as follows:

### JURISDICTION AND VENUE

1.  This is an action arising under Sections 5(a), 12(1), 12(2), and 17(a) of the Securities Act of 1933, as amended (hereinafter the "1933 ACT"); and also Sections 10(b) and 10(b)(5) of the Securities Exchange Act of 1934 (hereinafter the "1934 ACT") to redress violations of said Acts and to recover damages and other statutory penalties caused by Defendants' unauthorized purchases of securities in PLAINTIFF'S name; Defendants' failures to honor PLAINTIFF'S repeated orders to sell said securities; Defendants' failures to  make disclosures to PLAINTIFF as required under said Acts; and numerous other acts and omissions of said Defendants constituting further violations of said Acts as set forth in detail herein; and to recover costs and attorneys' fees as provided by said Acts. This Court has subject matter jurisdiction pursuant to Section 22 of the 1933 ACT and Section 27 of the 1934 ACT ( 15 U.S.C. 77(v) and 15 U.S.C. 78(aa) at. seq., respectively).

-2-

2. This Court also has Supplemental Jurisdiction over all State Claims set forth herein, pursuant to 28 U.S.C. Section 1367.

3. Venue is properly laid in the Southern District of California pursuant to 28 U.S.C. Section 1391(b), in that the breaches of duty and violations of law herein alleged occurred in this District, and one or more of the Defendants resides or is found in this District, and in that the causes of action arose and the resulting injuries were caused in this District.

**PARTIES**

4. Plaintiff ORIEN L. TULP (hereinafter "Plaintiff" or "Dr. Tulp") is an individual who, at all relevant times herein, resided in the County of San Diego, State of California or in the Cities of Philadelphia, Pennsylvania and Media, Pennsylvania. Plaintiff currently resides in the City of Media, State of Pennsylvania.

5. Defendant CARTWRIGHT & WALKER SECURITIES, INC. (hereinafter "CARTWRIGHT & WALKER" or "C & W") was, at all relevant times herein, a California Corporation with its principal place of business located in San Diego, California; and/or with one or more offices in San Diego, California.

6. Plaintiff is informed and believes, and thereon alleges, that individual Defendants ELLIOTT FISHER (hereinafter "MR. FISHER"), EVERETT SCOVILLE WALKER, JR. aka

-3-

SCOVILLE WALKER (hereinafter "MR. WALKER"), EUGENE TODD aka GENE TODD (hereinafter "MR. TODD"), RICHARD GAVSNEY (hereinafter "MR. GAVSNEY"), and EUGENE FLAXMAN aka EUGENE ROSENFELD aka EUGENE ROSEN (hereinafter "MR. FLAXMAN"), and each of them, were at all relevant times herein owners, principal shareholders, directors, officers, promoters, principals, agents, brokers, employees or other representatives acting for or on behalf of Defendant CARTWRIGHT & WALKER. Plaintiff asks leave of this Court to amend this Complaint to more specifically identify their exact positions and/or capacities once he ascertains them.

7.   Plaintiff is informed and believes, and thereon alleges that Defendant CARTWRIGHT & WALKER has been either suspended or permanently barred from doing business in the State of California (as well as on a nationwide basis), as the result of certain judicial and/or administrative proceedings taken against C&W. Plaintiffs asks leave of this Court to amend his Complaint to supply more specific details of the suspension and/or termination of C&W's corporate authority/capacity upon discovery of same. Due to these facts, Plaintiff also requests that this Court permit him to proceed directly against the individual named and "DOE" Defendants herein who are or were the owners, principals, sole or controlling/close shareholders, directors, officers and key managerial employees, brokers and agents who acted for or on behalf of C&W herein. Plaintiff bases his request

-4-

upon fundamental principles of law and equity, which will permit the corporate veil to be pierced where, as here, said Defendants used the corporate entity solely or principally as a shield to enable its owners and principals to avoid personal liability for their tortious acts and omissions and other violations of law.

8.    Plaintiff is informed and believes, and thereon alleges that Defendant STELLA BELLA COFFEE COMPANY (hereinafter "STELLA BELLA") is, and at all relevant times herein was either a California Corporation, a California Partnership, a California Joint Venture, or a California Sole Proprietorship, with its principal place of business located in the County of San Diego, State of California; and/or licensed to do and/or doing substantial business in the County of San Diego, State of California, thus fulfilling the minimum contact requirements to comport with Constitutional Due Process. Plaintiff will amend this Complaint to strike the superfluous entity forms (or will dismiss said superfluous forms) upon his discovery of which of said legal forms is correct.

9.    Plaintiff is informed and believes, and thereon alleges that one or more of the individual Defendants (named or DOE) herein are either an owner, principal shareholder, director, officer, partner, principal, agent, employer, employee and/or other representative acting for or on behalf of STELLA BELLA.

-5-

10. Plaintiff is informed and believes, and thereon alleges that Defendant FLETCHER & FARADAY (hereinafter "FLETCHER & FARADAY" or "F & F") is, and at all relevant times herein was, either a New York Corporation, a New York Partnership, a New York Joint Venture, or another form of business entity legally recognized in the State of New York, with its principal place of business in New York City, New York. Plaintiff is further informed and believes, and thereon alleges, that FLETCHER & FARADAY also is and/or was, at all relevant times herein, licensed to do business in or doing business in California, with one or more offices in California, establishing more than sufficient minimum contacts with the forum state to comport with Constitutional Due Process. Plaintiff is further informed and believes, and thereon alleges, that FLETCHER & FARADAY is either a successor to, parent of, subsidiary of, affiliate of, or other business entity having a substantial commonality of ownership and/or control with business entity Defendants C & W, STELLA BELLA, and/or Z-3 CAPITAL herein.

11. Plaintiff is informed and believes, and thereon alleges that one or more of the individual Defendants (named or DOE) herein are either an owner, principal shareholder, director, officer, partner, principal, agent, employer, employee and/or other representative acting for or on behalf of FLETCHER & FARADAY.

12. Plaintiff is informed and believes, and thereon

-6-

alleges that Defendant Z-3 CAPITAL (hereinafter "Z-3 CAPITAL" or "Z-3") is either a California Corporation, California Partnership, California Joint Venture, California Sole Proprietorship or other form of business entity legally recognized in the State of California, with its principal place of business in the City and County of San Diego, California. Plaintiff is further informed and believes, and thereon alleges, that Z-3 CAPITAL also is and/or was, at all relevant times herein, licensed to do business in or doing business in California, with one or more offices in California, establishing more than sufficient minimum contacts with the forum state to comport with Constitutional Due Process. Plaintiff is further informed and believes, and thereon alleges, that Z-3 CAPITAL is the direct and principal successor to Defendant C & W herein, and also is either a successor to, parent of, subsidiary of, affiliate of, or other business entity having a substantial commonality of ownership and/or control with business entity Defendants C & W, STELLA BELLA, and/or Z-3 CAPITAL herein.

13.   Defendants DOES 1 through 50 herein are sued under fictitious names. The authorization to include "DOE" Defendants in a Federal action is set forth in Lindley v. General Electric Co. ( 9th Cir., 1986) 780 F.2d 797. Plaintiff is informed and believes, and thereon alleges, that said DOE Defendants are owners, principals, directors, officers, brokers, agents, employers, employees and/or other

-7-

representatives acting for or on behalf of Defendants C&W, STELLA BELLA, FLETCHER & FARADAY, and/or Z-3 CAPITAL, whose individual names and capacities are not currently known to Plaintiff. When their true names and capacities are ascertained, Plaintiff will amend this Complaint to state said exact names and capacities. Plaintiff is further informed and believes, and thereon alleges, that each of the fictitiously named DOE Defendants is in some way responsible for the violations of law, transactions, breaches, and tortious acts and omissions herein alleged, and that Plaintiff's damages were proximately or substantially caused by said DOE Defendants, and each of them, in addition to the named Defendants.

14.    Plaintiff is informed and believes, and thereon alleges, that Defendants C&W, STELLA BELLA, FLETCHER & FARADAY, and Z-3 CAPITAL are or were commonly or collectively owned and/or controlled by the individual Defendants named herein, plus possible additional DOE Defendants herein. Plaintiff therefore asks leave of this Court to permit him, in addition to proceeding against the various business entity Defendants herein, to also proceed directly against said individual Defendants. Plaintiff bases his request upon the allegations of fraud against said individual Defendants herein, which entitle Plaintiff to pierce the corporate veil. Said piercing is in turn based on the fact that the corporate Defendants herein were used

-8-

solely or primarily as vehicles to defraud Plaintiff and other members of the public similarly situated, while said corporate shells were simultaneously used to unfairly shield the individual Defendants from personal liability.

15.    Plaintiff is informed and believes, and thereon alleges, that corporate Defendants C & W, STELLA BELLA, FLETCHER & FARADAY, and Z-3 CAPITAL and their respective owners, principals, directors, officers, managers, and brokers (including Defendants WALKER, FLAXMAN and FISHER and possible DOE Defendants) are vicariously liable for the breaches, violations of law, and acts and omissions of Defendants TODD, GAVSNEY, and possible DOE Defendants committed within the course and scope of their employment or agency, as set forth herein.

16.    Plaintiff is informed and believes, and thereon alleges, that at all relevant times during the breaches, violations of law, acts and occurrences herein mentioned, each of the Defendants (both named and DOE Defendants) was the partner, principal, agent, employer, employee, or other representative of (or co-conspirator with) each of the remaining Defendants, and in doing or failing to do the things herein alleged, was acting within the scope of such partnership, agency, employment, conspiracy or other legally recognizable relationship, and with the permission, consent, and/or ratification of said remaining Defendants.

17.    Plaintiff is informed and believes, and thereon

-9-

alleges, that in the course of the offering and/or sale of securities as herein alleged, Defendants, and each of them, have solicited for the sale of, and have engaged in the sale of securities in interstate commerce through the medium of the mails and by telephone, as set forth in the factual allegations contained herein. Thus, this Court has personal jurisdiction over all parties to this action.

////

## BACKGROUND, INTRODUCTORY ALLEGATIONS AND
## FACTS COMMON TO ALL CLAIMS

18. On or about March 28, 1994 Defendant ELLIOTT FISHER placed an unsolicited "cold" telephone call to Plaintiff. Defendant FISHER identified himself by name, and as a "Vice-President" of Defendant brokerage firm CARTWRIGHT & WALKER. MR. FISHER told Plaintiff that he wanted Plaintiff to purchase stock in a publicly-traded company called Metro Wireless (apparently abbreviated and referred to as "MWTX").

19. Plaintiff responded to FISHER by telling him that he was not interested in purchasing the MWTX stock or any other security from FISHER or C & W. Despite Plaintiff's clear statement, FISHER continued to attempt to convince Plaintiff to enter into such a transaction, despite Plaintiff's repeated objections and protests. Finally the telephone conversation ended. At no time during said conversation did Plaintiff ever agree to purchase any securities from or enter into any transaction whatsoever

-10-

with FISHER or his principal, C & W.

20. Approximately one week later, in very early April, 1994, Plaintiff received in the mail a written "confirmation" of a purported "purchase order" by Plaintiff for 100 shares of MWTX stock. A true and correct copy of said document is attached hereto and incorporated herein as Exhibit "A". Plaintiff denies having ever entered into said transaction.

21. A few days after receiving the purported "confirmation", Plaintiff received a telephone call from someone identifying herself only as "Arlene", which person held herself out as an administrative assistant for C & W. "Arlene" asked Plaintiff when he intended to pay for his "purchase" of stock. Plaintiff replied that if there was any such "purchase", it was unauthorized, and that he had never agreed to purchase this or any other security through C & W, and that he thus would not be sending payment for something he never bargained for. Plaintiff then demanded to speak with Defendant FISHER, and was rebuffed for several days or more.

22. Finally, Plaintiff was allowed to speak with MR. FISHER. When Plaintiff reminded FISHER that he had refused to enter into any transaction with FISHER or C & W, FISHER threatened Plaintiff by stating that C & W would "take any steps necessary" to collect the purported monies owed. Plaintiff expressed his shock and outrage at these threats,

-11-

and once again repeated that he had not purchased anything through or from C & W. FISHER thereupon continued to incessantly threaten Plaintiff.

23.    Finally, as a last resort and in desperation to get FISHER to stop harassing and threatening him, Plaintiff agreed to send payment for the 100 shares of MWTX stock at the purported price of $ 6.25 per share, for a total of not less than $ 625.00. Plaintiff informed FISHER that the only reason he was paying this money was so that FISHER would leave him in peace, and not because he voluntarily intended to enter into said transaction. Plaintiff also reasonably believed that, by this point in time, he had a better chance of simply selling said stock as soon as possible than to continue to resist the extreme duress under which he was placed by FISHER.

24.    On or about May 6, 1994, and before Plaintiff had been able to sell the stock, Defendant FISHER telephoned him again, for the purpose of trying to get Plaintiff to purchase at least another **one hundred thousand** ( 100,000) shares of MWTX stock, which by then had purportedly declined in value to not more than $ 4.00 per share. Plaintiff alleges that FISHER stated to him at that time "if you liked the stock at $ 6.25 you should love it at $ 4.00". Plaintiff responded that he was aghast that FISHER would dare to come back yet again after all that had transpired and ask him to invest millions of dollars in the same stock. Plaintiff

-12-

restated that he never even voluntarily entered into the original "purchase" of 100 shares. Despite Plaintiff's protestations, FISHER then "lowered" his "offer" to "allow" Plaintiff to purchase "only" 100,000 shares of MWTX. Once again, Plaintiff refused, and asked FISHER to stop harassing him. Plaintiff also informed FISHER that even if he had the money (which he did not) and wanted to enter into said purchase (which he again did not), he was leaving that day for active military duty, and would not return for at least two (2) weeks.

25.    Despite Plaintiff's still further pleas to leave him alone, FISHER persisted in said telephone call, and next reduced the "minimum purchase requirement" to 9,900 shares, which would make an even 10,000 shares in Plaintiff's account. The cost of said purchase, including commissions, was approximately Forty Thousand Dollars ( $ 40,000.00). Still once more, Plaintiff refused this "offer", restating all of the reasons already given for not wanting to buy the stock and for not wanting to do any business whatsoever with C & W or MR. FISHER.

26.    Despite all of his many protests, Plaintiff found, upon his return to his office on May 23, 1994, a mailed "confirmation" of this purported further "purchase" of 9,900 shares of MWTX, at a cost of approximately Forty Thousand Dollars ( $ 40,000.00). Three days later, on or about May 26, 1994, Plaintiff telephoned Defendant FISHER to protest

-13-

this unauthorized "purchase", to which FISHER replied that C & W had decided to "hold the offer open for 21 days", and that the share price had increased to $ 5.50. Plaintiff then instructed FISHER to immediately sell all of his MWTX stock, purchased in his name and without his authorization or consent, and then deduct the purported "purchase" price of $ 4.00 per share out of the proceeds, giving him the net profit. FISHER refused to do this, stating that he could not "sell" the MWTX stock unless Plaintiff actually paid cash for it. FISHER next said that he would sell the MWTX "immediately" upon receiving the cash payment from Plaintiff.

27.   Plaintiff, having no choice and feeling that he was at Defendants' mercy, sent in payment of approximately $ 40,000.00 within the next few days. Contrary to FISHER'S pledge, neither FISHER nor any agent, employee or representative of C & W herein ever honored Plaintiff's repeated and strident orders to sell the stock. To this date, Plaintiff has still been unable to sell his stock, and he has suffered a near-total loss of all the monies he purportedly "invested" under great duress imposed upon him by Defendant C & W and various individual Defendants acting on C & W's behalf.

28.   Plaintiff is informed and believes, and thereon alleges, that in addition to the acts and omissions of the Defendants as set forth above, he was asked to pay the

-14-

$ 40,000.00 to C & W again, after he had already sent in the above-referenced payment. This request was made by "Arlene" of Defendant C & W over the telephone in approximately June of 1994. Some time after Plaintiff refused to do so, one or more of the individual Defendants herein, including FISHER (who told Plaintiff that he "knew how" to access Plaintiff's retirement accounts if Plaintiff would just "give him the contract numbers"), attempted to access Plaintiff's personal retirement accounts in an attempt to effect an additional, unauthorized withdrawal of another $ 200,000.00 from Plaintiff's retirement funds.

29.  On Thursday, September 29, 1994, Plaintiff personally travelled from Philadelphia to C & W's San Diego offices and met with FISHER that afternoon. Plaintiff again repeated his demands, and FISHER again agreed to sell the stock and remit the proceeds based on the $ 6.00 per share price at which Plaintiff had originally demanded it be sold. FISHER stated that Plaintiff would have a check in the amount of Forty-Six Thousand Dollars ( $ 46,000.00) representing said proceeds "within ten (10) days". Said check never came.

30.  To the date of this Complaint, Plaintiff has been unable to sell his MWTX stock (which was apparently bought out by and exchanged for shares of stock in Defendant STELLA BELLA, all without Plaintiff's authorization or consent), which has resulted in a loss to him of at least $ 46,000.00

-15-

in principal alone. No person affiliated with Defendant C & W, or any of the other business entity defendants or any of their respective principals, directors, officers, agents, brokers, employees or other representatives has ever expressed any interest in resolving this matter, despite Plaintiff's repeated calls and letters over a period in excess of one (1) year prior to his filing this lawsuit.

31. Plaintiff is informed and believes, and thereon alleges, that the Defendants herein engaged in the unlawful practice of "making book" at Plaintiff's expense, based upon Plaintiff's reasonable belief, from the facts presently available to him, that C & W (and perhaps Defendants F & F and Z-3) own or owned (at all relevant times herein) a majority of shares (if not all of them) in the MWTX and/or STELLA BELLA stock (or in the entities themselves by some other means) which they forced upon Plaintiff against his will.

**FIRST CLAIM**

**VIOLATIONS OF SECTIONS 5 AND 12(1) OF THE 1933 ACT**

**(Against all Defendants)**

32. Plaintiff realleges and incorporates by this reference the factual allegations contained in Paragraphs 1 through 31 as if fully set forth herein.

33. Plaintiff is informed and believes and thereon alleges that Defendants, and each of them, offered and sold to Plaintiff an investment in MWTX without delivery of a

-16-

prospectus to Plaintiff, and without having a registration statement in effect for said security.

34. The investments sold and the acts complained of in this First Claim involve the purchase and sale of "securities" within the meaning of Sections 2(1) and 2(3) of the 1933 ACT, by means of both oral and written communication, by use of the US mails, and by use of the means and instrumentalities of interstate commerce. Plaintiff is further informed and believes, and thereon alleges, that the securities offered and sold by said Defendants, and each of them, were not registered with the Securities and Exchange Commission as required by Section 5(a) of the 1933 ACT, nor was there any exemption to registration available to said Defendants. Therefore, such securities were offered for sale and sold by said Defendants, and each of them, in violation of Section 12(1) of the 1933 ACT.

35. The Defendants in this First Claim, and each of them, demanded and accepted payment for, and delivered confirmation of Plaintiff's purported investment of MWTX stock through the US Mail. Further, Defendants FISHER, WALKER, TODD, and GAVSNEY (and possible other individual DOE Defendants) upon numerous occasions between March of 1994 through the present, used the telephone system and the US Mail, instrumentalities of interstate commerce, to communicate with, solicit, promote, and encourage the sale

-17-

of said investments to Plaintiff. Plaintiff is informed and believes and thereon alleges that Defendants' acts, as set forth herein, were undertaken without the required registration statement for securities offered and sold, and, as such, constituted a direct violation of Section 5(a) of the 1933 ACT. Thus, pursuant to Section 12(1) of the 1933 ACT, said Defendants are liable to Plaintiff.

36. As a direct and proximate result of the violations by the Defendants in this First Claim, and each of them, of Section 12(1) of the 1933 ACT, Plaintiff has been damaged as follows:

a. Plaintiff's loss of his entire cash payments to Defendant C & W, in the sum of Not Less Than Forty Six Thousand Dollars ( $ 46,000.00); and

b. Prejudgment interest at the legal rate of Ten Percent ( 10% ) per annum, accrued upon the principal amount of $ 46,000.00, from the date of that Defendants first failed and refused to sell said securities (approximately June 1, 1994), which interest has accrued as of the date of this Complaint in the total current sum of not less than Eight Thousand Four Hundred Thirty-Three Dollars ( $ 8,433.00), subject to further increase until a final judgment is rendered herein.

////

////

////

-18-

## SECOND CLAIM

## VIOLATION OF SECTION 12(2) OF THE 1933 ACT

## ( Against all Defendants )

37.  Plaintiff herein realleges and incorporates by reference the factual allegations contained in Paragraphs 1 through 31. as if fully set forth herein.

38.  As set forth in detail in the factual allegations herein, the Defendants in this Second Claim, and each of them, misrepresented to Plaintiff both the nature and the safety/security of the investments made by them purportedly on Plaintiff's behalf, as well as the terms and conditions under which Plaintiff would be free to sell his investments. Plaintiff is informed and believes and thereon alleges that said Defendants, and each of them, knew or had reason to know, at the time they made these representations (or concealed true facts from Plaintiff), that (i) said investments would not be in "safe and secure" securities, but rather in highly volatile, closely-traded, and unpredictable securities; (ii) they would not honor Plaintiff's repeated requests to refrain from purchasing said securities in his name; (iii) they would not be truthful in their confirmations of Plaintiff's purported purchases of said securities; (iv) they would in fact fabricate phony written "confirmations" of orders that were never made or authorized by Plaintiff; (v) they would never honor any of Plaintiff's repeated requests and/or demands to

-19-

sell said securities or any portion thereof; (vi) they would threaten Plaintiff with legal collection action if he failed to pay for these unauthorized purchases; and (vii) that one or more of said Defendants owned a controlling interest, either individually or collectively, in the securities (either MWTX and/or STELLA BELLA stock) forced upon Plaintiff against his will. Plaintiff is further informed and believes, and thereon alleges, that said Defendants, and each of them, made said misrepresentations or engaged in said acts of concealment with the intent of inducing Plaintiff into purchasing his investment interests herein.

39.    Plaintiff, who had no knowledge of the misleading nature of Defendants' statements (or of the true facts withheld and concealed from him by said Defendants), reasonably and justifiably relied upon said representations, acts and omissions, in initially entering into the purported transactions set forth herein, and in continuing to believe that said Defendants would honor his increasingly vocal and strident requests and demands to sell said securities as set forth in detail above, on those occasions when said Defendants provided assurances to him.

40.    As a material component of the sale of the investment interests herein described to Plaintiff, Defendant C & W both demanded and accepted payment for and delivered purported confirmations of said purchases to Plaintiff through the United States Mail. Further, at all

-20-

relevant times set forth herein, Defendants, and each of them, used the telephone system, an instrument of interstate commerce, to communicate with and continually harass Plaintiff and threaten Plaintiff into purchasing further blocks of said securities from them, against his will.

41.   As a direct and proximate result of the words, acts and omissions of the Defendants named in this Second Claim, and each of them, said Defendants were benefitted, in that each such Defendant directly or indirectly realized revenue and/or profits from the monies invested by Plaintiff.

42.   Plaintiff does hereby tender and will relinquish his investment interests in MWTX and/or STELLA BELLA, if any, to Defendant C & W or Z-3 or FLETCHER & FARADAY or any other Defendant herein, named or DOE, that currently owns the entity acting as broker for or owner of the assets relating to said securities, upon receipt of all monies paid by him for their purported purchase, plus interest from the date of said purported purchases through the date of said reimbursement.

43.   As a direct and proximate result of the violations by the Defendants in this Second Claim, and each of them, of Section 12(2) of the 1933 ACT, Plaintiff has been damaged as follows:

a.   Plaintiff's loss of his entire principal investment with Defendant C & W, in the sum of Not Less Than

-21-

either individually or collectively, in the securities (either MWTX and/or STELLA BELLA stock) forced upon Plaintiff against his will.

47.   Plaintiff is further informed and believes, and thereon alleges, that the Defendants in this Third Claim, and each of them, made said misrepresentations or engaged in said acts of concealment with the intent of inducing Plaintiff into purchasing his investment interests herein, as part of a scheme to defraud Plaintiff and obtain Plaintiff's money by coercing him into paying for unauthorized transactions and then by preventing him from subsequently extricating himself from said transactions by refusing and failing to honor his orders to sell said securities.

48.   Plaintiff, who had no knowledge of the misleading nature of Defendants' statements (or of the true facts withheld and concealed from him by said Defendants), reasonably and justifiably relied upon said representations, acts and omissions, in initially entering into the purported transactions set forth herein, and in continuing to believe that said Defendants would honor his increasingly vocal and strident requests and demands to sell said securities as set forth in detail above, on those occasions when said Defendants provided assurances to him.

49.   As a material component of the sale of the investment interests herein described to Plaintiff, said

-24-

Defendants solicited Plaintiff, demanded and accepted payment for, and delivered purported confirmations of said unauthorized purchases to Plaintiff through the United States Mail. Further, at all relevant times set forth herein, Defendants, and each of them, used the telephone system, an instrument of interstate commerce, to communicate with and continually harass Plaintiff and threaten Plaintiff into purchasing further blocks of said securities from them, against his will.

50. As a direct and proximate result of the words, acts and omissions of the Defendants named in this Third Claim, and each of them, said Defendants were benefitted, in that each such Defendant directly or indirectly realized revenue and/or profits from the monies paid by Plaintiff.

51. Plaintiff does hereby tender and will relinquish his investment interests in MWTX and/or STELLA BELLA, if any, to Defendant C & W or Z-3 or FLETCHER & FARADAY or any other Defendant herein, named or DOE, that currently owns the entity acting as broker for or owner of the assets relating to said securities, upon receipt of all monies paid by him for their purported purchase, plus interest from the date of said purported purchases through the date of said reimbursement.

52. As a direct and proximate result of the violations by the Defendants in this Third Claim, and each of them, of Section 17(a) of the 1933 ACT, Plaintiff has been damaged as

-25-

follows:

a.   Plaintiff's loss of his entire principal investment with Defendant C & W, in the sum of Not Less Than Forty Six Thousand Dollars ( $ 46,000.00); and

b.   Prejudgment interest at the legal rate of Ten Percent ( 10% ) per annum, from the date that Defendants first failed and refused to sell said securities (approximately June 1, 1994), which interest has accrued as of the date of this Complaint in the total current sum of not less than Eight Thousand Four Hundred Thirty-Three Dollars ( $ 8,433.00), subject to further increase until a final judgment is rendered herein.

53.   As a further direct and proximate result of the violations of Section 17(a) of the 1933 ACT committed by the Defendants named in this Third Count, and each of them, Plaintiff has been forced to incur costs and attorneys' fees in the current sum of not less than Two Thousand Five Hundred Dollars ( $ 2,500.00), which sum will continue to increase through the date of a final judgment herein, in a further amount according to proof.

54.   Plaintiff is informed and believes, and thereon alleges, that the Defendants named in this Third Claim, and each of them, acted with fraud and oppression with respect to the misrepresentations committed in violation of Section 17(a) of the 1933 ACT. Plaintiff is further informed ad believes, and thereon alleges, that said Defendants so acted

-26-

with knowledge or reason to know of the falsity of said representations, and of the negative and substantial economic consequences that would befall Plaintiff as a result of such fraud. Such consequences have included the loss by Plaintiff of his entire principal investment of over $ 40,000.00, and all consequential costs resulting to Plaintiff in having no choice but to file the instant lawsuit. Such despicable conduct was carried on by the Defendants named in this Third Claim, and each of them, in conscious disregard of the rights of Plaintiff, and subjected Plaintiff to unjust and severe economic injury. Therefore, Plaintiff is entitled to an award of punitive/exemplary damages in the amount of not less than Five Hundred Thousand Dollars ( $ 500,000.00).

### FOURTH CLAIM

### VIOLATION OF SECTION 10(b) and RULE 10(b)-5 OF THE 1934 ACT
### (Against all Defendants)

55.   Plaintiff herein realleges and incorporates by reference the factual allegations contained in Paragraphs 1 through 31. as if fully set forth herein.

56.   From on or about March 28, 1994, the date of the first improper solicitation of Plaintiff by Defendants herein, and on the many subsequent occasions set forth in detail in the factual allegations hereof, the Defendants named in this Fourth Claim, and each of them, misrepresented to Plaintiff the nature of the investments; the safety and

-27-

security of said investments; and their intentions and/or capacity to honor Plaintiff's requests both (i) to refrain from purchasing any such stock in his name or on his behalf; and (ii) to sell said securities once said unauthorized transactions had been made. Plaintiff is informed and believes, and thereon alleges, that said Defendants knew or had reason to know, at the time they made said representations (both affirmative and by omission/ concealment) that (i) said investments would not be in "safe and secure" securities, but rather in highly volatile, closely-traded, and unpredictable securities; (ii) they would not honor Plaintiff's repeated requests to refrain from purchasing said securities in his name; (iii) they would not be truthful in their confirmations of Plaintiff's purported purchases of said securities; (iv) they would in fact fabricate phony written "confirmations" of orders that were never made or authorized by Plaintiff; (v) they would never honor any of Plaintiff's repeated requests and/or demands to sell said securities or any portion thereof; (vi) they would threaten Plaintiff with legal collection action if he failed to pay for these unauthorized purchases; and (vii) that one or more of said Defendants owned a controlling interest, either individually or collectively, in the securities (either MWTX and/or STELLA BELLA stock) forced upon Plaintiff against his will.

57.    Plaintiff is further informed and believes, and

-28-

thereon alleges, that the Defendants in this Fourth Claim, and each of them, made said misrepresentations or engaged in said acts of concealment with the intent of inducing Plaintiff into purchasing his investment interests herein, as part of a scheme to defraud Plaintiff and obtain Plaintiff's money by coercing him into paying for unauthorized transactions and then by preventing him from subsequently extricating himself from said transactions by refusing and failing to honor his orders to sell said securities.

58.   Plaintiff, who had no knowledge of the misleading nature of Defendants' statements (or of the true facts withheld and concealed from him by said Defendants), reasonably and justifiably relied upon said representations, acts and omissions, in initially entering into the purported transactions set forth herein, and in continuing to believe that said Defendants would honor his increasingly vocal and strident requests and demands to sell said securities as set forth in detail above, on those occasions when said Defendants provided assurances to him.

59.   As a material component of the sale of the investment interests herein described to Plaintiff, said Defendants solicited Plaintiff, demanded and accepted payment for, and delivered purported confirmations of said unauthorized purchases to Plaintiff through the United States Mail. Further, at all relevant times set forth

-29-

herein, Defendants, and each of them, used the telephone system, an instrument of interstate commerce, to communicate with and continually harass Plaintiff and threaten Plaintiff into purchasing further blocks of said securities from them, against his will.

60. As a direct and proximate result of the words, acts and omissions of the Defendants named in this Fourth Claim, and each of them, said Defendants were benefitted, in that each such Defendant directly or indirectly realized revenue and/or profits from the monies paid by Plaintiff.

61. This Fourth Claim is for an accounting and damages under Section 10(b) of the 1934 ACT, and Rule 10(b)-5, as promulgated thereunder. Pursuant to Section 10(b) ad Rule 10(b)-5, as judicially construed, the Defendants named in this Fourth Claim, and each of them, are accountable to Plaintiff for any profits realized as a result of the sale of securities to Plaintiff in violation of Section 10(b) and Rue 10(b)-5. The precise amount of profit is unknown to Plaintiff at this time, and should be determined upon such an accounting.

62. As a direct and proximate result of the violations by the Defendants in this Fourth Claim, and each of them, of Section 10(b) and Rule 10(b)-5 of the 1934 ACT (and in addition to the accounting requested in Paragraph 61. above), Plaintiff has been damaged as follows:

-30-

a.    Plaintiff's loss of his entire principal investment with Defendant C & W, in the sum of Not Less Than Forty Six Thousand Dollars ( $ 46,000.00); and

b.    Prejudgment interest at the legal rate of Ten Percent ( 10% ) per annum, from the date that Defendants first failed and refused to sell said securities (approximately June 1, 1994), which interest has accrued as of the date of this Complaint in the total current sum of not less than Eight Thousand Four Hundred Thirty-Three Dollars ( $ 8,433.00), subject to further increase until a final judgment is rendered herein.

## SUPPLEMENTAL STATE LAW CLAIMS

## FIFTH CLAIM

## VIOLATION OF CALIFORNIA CORPORATIONS CODE SECTION 25110

## (Against all Defendants)

63.    Plaintiff herein realleges and incorporates by reference the factual allegations contained in Paragraphs 1 through 31. as if fully set forth herein.

64.    As set forth in detail in the factual allegations contained herein, Plaintiff is informed and believes, and thereon alleges, that the Defendants named in this Fifth Count, and each of them, by their acts of solicitation and receiving funds for Plaintiff's purported and unauthorized investments in MWTX and/or STELLA BELLA stock (which stock is Plaintiff is informed and believes and thereon alleges is or was primarily owned by one or more of said Defendants),

-31-

said Defendants have "offered and sold securities", as defined in Title I, Sections 2(1) and 2(3) of the 1933 ACT, and in Section 25019 of the California Corporations Code, without the delivery of a prospectus to Plaintiff; without a registration statement in effect for those securities; and without qualifying under Section 25110 of the California Corporations Code.

65. As a direct and proximate result of the violations by the Defendants in this Fifth Claim, and each of them, of Section 25110 of the California Corporations Code, Plaintiff has been damaged as follows:

a. Plaintiff's loss of his entire principal investment with Defendant C & W, in the sum of Not Less Than Forty Six Thousand Dollars ( $ 46,000.00); and

b. Prejudgment interest at the legal rate of Ten Percent ( 10% ) per annum, from the date that Defendants first failed and refused to sell said securities (approximately June 1, 1994), which interest has accrued as of the date of this Complaint in the total current sum of not less than Eight Thousand Four Hundred Thirty-Three Dollars ( $ 8,433.00), subject to further increase until a final judgment is rendered herein.

**SIXTH CLAIM**

**VIOLATION OF CALIFORNIA CORPORATIONS CODE SECTION 25400(d)**

**(Against all Defendants)**

66. Plaintiff herein realleges and incorporates by

-32-

reference the factual allegations contained in Paragraphs 1 through 31. as if fully set forth herein.

67. As set forth in detail in the factual allegations herein, the Defendants named in this Sixth Claim, and each of them, created false and misleading statements (and deliberately concealed the true facts concerning) about the nature, safety and security of the investment interests purportedly purchased by Plaintiff, for the purpose of inducing Plaintiff to make said purchases and to pay Defendants for said unauthorized purchases. Plaintiff is further informed and believes, and thereon alleges, that under the circumstances set forth herein, said Defendants knew or had every reason to know that their representations were false or misleading.

68. As a direct and proximate result of the violations by the Defendants named in this Sixth Claim, and each of them, of Section 25400(d) of the California Corporations Code, Plaintiff has been damaged as follows:

a.    Plaintiff's loss of his entire principal investment with Defendant C & W, in the sum of Not Less Than Forty Six Thousand Dollars ( $ 46,000.00); and

b.    Prejudgment interest at the legal rate of Ten Percent ( 10% ) per annum, from the date that Defendants first failed and refused to sell said securities (approximately June 1, 1994), which interest has accrued as of the date of this Complaint in the total current sum of

-33-

not less than Eight Thousand Four Hundred Thirty-Three Dollars ( $ 8,433.00), subject to further increase until a final judgment is rendered herein.

69.    Plaintiff is informed and believes, and thereon alleges, that the Defendants named in this Sixth Claim, and each of them, acted with fraud and oppression with respect to their fraudulent acts and omissions committed herein in violation of Section 25400(d) of the California Corporations Code. Plaintiff is further informed ad believes, and thereon alleges, that said Defendants so acted with knowledge of, and/or reckless disregard for, the falsity of these representations and of the serious negative economic consequences that would befall Plaintiff as a result of such fraud. Said knowledge was acquired directly from Plaintiff's repeated and vocal warnings to FISHER and other Defendants herein of the significant detrimental impact upon him of Defendants' continued failures to sell the securities and remit payment in full to him upon said sale. Such consequences, which were known to Defendants, included the loss by Plaintiff of his entire principal investment of over $ 46,000.00, and all consequential costs resulting to Plaintiff in being forced to file and prosecute the instant action. Such despicable conduct was carried on by the Defendants named in this Sixth Claim, and each of them, in conscious disregard of the rights of Plaintiff, and subjected Plaintiff to unjust economic injury. Therefore,

-34-

Plaintiff is entitled to an award of punitive/exemplary damages, in an amount according to proof.

### SEVENTH CLAIM

### VIOLATION OF CALIFORNIA CORPORATIONS CODE SECTION 25401

### (Against all Defendants)

70.   Plaintiff herein realleges and incorporates by reference the factual allegations contained in Paragraphs 1 through 31. as if fully set forth herein.

71.   As set forth in detail in the factual allegations contained herein, the Defendants named in this Seventh Claim, and each of them, offered to sell and did sell to Plaintiff the investment interests herein, both orally and in writing, and by means of untrue statements of material fact and/or by omitting to state material facts, which facts were necessary under the circumstances in order to make their statements not misleading.

72.   As a direct and proximate result of the violations by the Defendants in this Seventh Claim, and each of them, of Section 25401 of the California Corporations Code, Plaintiff has been damaged as follows:

a.   Plaintiff's loss of his entire principal investment with Defendant C & W, in the sum of Not Less Than Forty Six Thousand Dollars ( $ 46,000.00); and

b.   Prejudgment interest at the legal rate of Ten Percent ( 10% ) per annum, from the date that Defendants first failed and refused to sell said securities

-35-

(approximately June 1, 1994), which interest has accrued as of the date of this Complaint in the total current sum of not less than Eight Thousand Four Hundred Thirty-Three Dollars ( $ 8,433.00), subject to further increase until a final judgment is rendered herein.

## EIGHTH CLAIM

### BREACH OF CONTRACT

**(Against Defendants C & W, FLETCHER & FARADAY, Z-3, WALKER, FLAXMAN, and possible DOES)**

73.    Plaintiff herein realleges and incorporates by reference the factual allegations contained in Paragraphs 1 through 31. as if fully set forth herein.

74.    Plaintiff alleges that a series of express oral contracts and implied contracts existed between Plaintiff and Defendant C&W, which contracts were assumed by the successor entity to C&W, which Plaintiff is informed and believes is either Defendant FLETCHER & FARADAY or Defendant Z-3. Plaintiff is informed and believes, and thereon alleges, that the corporate or other business entities named in this Eighth Claim are closely-held or solely-owned corporations or other entities operating as alter egos of their individual principal owners and/or controlling shareholders, who comprise the individual Defendants named in this Eighth Claim and possible unidentified DOE Defendants herein. Under such express oral and implied

-36-

contracts, said Defendants either expressly promised, or were under an implied contractual duty (both in fact and arising by operation of law) to Plaintiff, among other things, to refrain from purchasing the stock that Plaintiff vociferously told them he did not authorize, and to sell said investments promptly after said unauthorized purchases were made in Plaintiff's name.

75.    Plaintiff alleges that the Defendants named in this Eighth Claim, and each of them, materially breached said express and implied contractual obligations by making said unauthorized purchases in Plaintiff's name, charging Plaintiff for said purchases, forcing Plaintiff under duress to make payments on said charges, and failing and refusing to honor Plaintiff's repeated requests and demands to sell said investments, from March of 1995 through the present date.

76.    As a direct and proximate result of said breaches of express and implied contractual obligations by the Defendants named in this Eighth Claim, and each of them, Plaintiff is entitled to full restitution of the entire consideration paid by him to said Defendants, in the sum of Not Less Than Forty Six Thousand Dollars ( $ 46,000.00), plus prejudgment interest on such unpaid principal at the legal rate of Ten Percent ( 10% ) per annum, in the current sum of Not Less Than Eight Thousand Four Hundred Thirty-Three Dollars ( $ 8,433.00), subject to further increase

-37-

until a final judgment is rendered herein.

### NINTH CLAIM

**BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

**(Against Defendants C & W, FLETCHER & FARADAY, Z-3, WALKER, FLAXMAN, and possible DOES)**

77.   Plaintiff herein realleges and incorporates by reference the factual allegations contained in Paragraphs 1 through 31. as if fully set forth herein.

78.   As fully set forth in the factual allegations contained herein, Plaintiff entered into his express and implied contractual relationships with the Defendants named in this Ninth Claim, and each of them, in justifiable reliance that said Defendants would honor their respective promises thereunder, which promises constituted constructive conditions of cooperation implied in every valid and enforceable contract entered into between consenting parties. Such promises included, but were not necessarily limited, among other things, to refrain from purchasing the stock that Plaintiff vociferously told them he did not authorize, and to sell said investments promptly after said unauthorized purchases were made in Plaintiff's name.

79.   As set forth in detail in the factual allegations herein, the Defendants named in this Ninth Claim, and each of them, failed to substantially perform their promises under the contracts, as referred to in Paragraph 77. above.

-38-

Such failures were committed in total bad faith, and constituted a breach of the implied covenant of good faith and fair dealing.

80.  Plaintiff is informed and believes, and thereon alleges, that the acts and omissions of the Defendants in this Ninth Claim were committed in bad faith with the intent of withholding vital information from Plaintiff and of further browbeating and threatening Plaintiff, for the ultimate purpose of defrauding him and unjustly collecting his money, which said Defendants never had any intention of reimbursing. Had Plaintiff known the true facts, he would never have paid for the unauthorized purchases described hereinabove, since he would have had notice that said Defendants never intended to allow him to sell these investments. Such acts and omissions have caused and will continue to cause severe economic loss to Plaintiff.

81.  As a direct and proximate result of the breaches by the Defendants named in this Ninth Claim, and each of them, of the implied covenant of good faith and fair dealing under the express and implied contracts herein, Plaintiff has been damaged as follows:

a.  Plaintiff's loss of his entire principal investment with Defendant C & W, in the sum of Not Less Than Forty Six Thousand Dollars ( $ 46,000.00); and

b.  Prejudgment interest at the legal rate of Ten Percent ( 10% ) per annum, from the date that Defendants

-39-

first failed and refused to sell said securities (approximately June 1, 1994), which interest has accrued as of the date of this Complaint in the total current sum of not less than Eight Thousand Four Hundred Thirty-Three Dollars ( $ 8,433.00), subject to further increase until a final judgment is rendered herein.

82.   As a further direct and proximate result of said Defendants' wrongful acts and omissions as set forth herein, Plaintiff has suffered severe emotional distress, which constitutes an element of general damages in an amount according to proof.

83.   The acts and omissions of the Defendants named in this Ninth Claim, and each of them, as specifically alleged in the introductory allegations hereof, were done intentionally, maliciously, oppressively, and with the intent of defrauding Plaintiff out of his money. Plaintiff is further informed and believes, and thereon alleges, that said Defendants so acted with knowledge of, and/or in reckless disregard of, the falsity of their promises and  representations and of the serious negative economic consequences that would befall Plaintiff as a result of such breaches and fraud. Such consequences included the loss by Plaintiff of his entire principal investment of over $ 46,000.00, and all consequential costs resulting to Plaintiff in being forced to file and prosecute the instant action. Such despicable conduct was carried on

-40-

by the Defendants named in this Ninth Claim, and each of them, in conscious disregard of the rights of Plaintiff, and subjected Plaintiff to unjust economic injury. Therefore, Plaintiff is entitled to an award of punitive/exemplary damages, in an amount according to proof.

### TENTH CLAIM

### COMMON COUNT (MONEY HAD AND RECEIVED)

### (Against Defendants C & W, FLETCHER & FARADAY, Z-3, WALKER, FLAXMAN, and possible DOES)

84. Plaintiff herein realleges and incorporates by reference the factual allegations contained in Paragraphs 1 through 31. as if fully set forth herein.

85. As set forth in detail in the factual allegations contained herein, Plaintiff paid a total of Not Less Than Forty Six Thousand Dollars ( $ 46,000.00) with the Defendants named in this Tenth Claim, and each of them. In return for these payments, made under duress, Plaintiff received the "confirmations" of the purported (and unauthorized) purchases attached as Exhibits "A" and "B" hereto.

86. Although Plaintiff has made repeated demands to said Defendants that they sell said securities and reimburse him in full for all such money paid, said Defendants, and each of them, have failed and continue to fail and refuse to repay any of the total principal invested with them by Plaintiff in the sum of Not Less Than Forty Six Thousand

-41-

Dollars ( $ 46,000.00), or any interest thereon from the date said Defendants' first failure and/or refusal to repay said funds to Plaintiff. There is now due, owing and unpaid to Plaintiff the principal sum of Not Less Than Forty Six Thousand Dollars ( $ 46,000.00), plus interest thereupon in the current sum of Not Less Than Eight Thousand Four Hundred Thirty-Three Dollars ( $ 8,433.00), subject to further increase until a final judgment is rendered herein.

## ELEVENTH CLAIM

### FRAUD (CALIFORNIA CIVIL CODE SECTION 1572; 1573)

### (Against all named Defendants except FLETCHER & FARADAY and Z-3, and possible DOES)

87.    Plaintiff herein realleges and incorporates by reference the factual allegations contained in Paragraphs 1 through 31. as if fully set forth herein.

88.    Plaintiff is informed and believes, and thereon alleges, that the Defendants named in this Eleventh Claim, and each of them, as promoters, solicitors, brokers, agents, and sellers of the securities at issue herein, have statutory duty, pursuant to Sections 1572 et. seq. of the California Civil Code, to disclose all known material facts of which a buyer of securities is unaware, and not to make affirmative misrepresentations about said facts. Such duty applies to all such Defendants (and any of their agents and employees) involved in the transactions set forth herein, even where said parties merely lack sufficient knowledge to

-42-

justify an affirmative statement about said securities or about their intentions respecting the use of Plaintiff's funds. Furthermore, said Defendants cannot avoid such statutory liability by asserting that the "buyer did not inquire"; and if said parties undertake to make any statement respecting the nature and safety of such securities, or of their handling of Plaintiff's funds therefor, said parties have an additional duty to conduct a reasonable and thorough investigation to ensure that such statements are in fact correct.

89. Plaintiff is informed and believes, and thereon alleges, that the Defendants named in this Eleventh Claim, and each of them, made affirmative misrepresentations about the nature and security of Plaintiff's investments (including but not limited to a "risk factor" of only Ten Percent (10%) on the MWTX stock, which in reality was Ninety-Two Percent (92%)) as well as about their intentions respecting the disposition of Plaintiff's funds after Plaintiff paid said money to them; and also as to when, or even if, Plaintiff would ever be allowed to sell the stock that was purchased without his consent or authorization, despite his repeated requests ad demands for such reimbursement to the present date, as set forth in detail in the factual allegations herein. Plaintiff is informed and believs that said Defendants, and each of them, made said representations with knowledge of their falsity, or strong

-43-

reason to know of their falsity, and with the intent of inducing and coercing Plaintiff into paying for said unauthorized investment purchases herein.

90. Plaintiff is further informed and believes, and thereon alleges, that the Defendants named in this Eleventh Claim, and each of them, failed, at a minimum, to disclose the facts that (i) said investments would not be in "safe and secure" securities, but rather in highly volatile, closely-traded, and unpredictable securities; (ii) they would not honor Plaintiff's repeated requests to refrain from purchasing said securities in his name; (iii) they would not be truthful in their confirmations of Plaintiff's purported purchases of said securities; (iv) they would in fact fabricate phony written "confirmations" of orders that were never made or authorized by Plaintiff; (v) they would never honor any of Plaintiff's repeated requests and/or demands to sell said securities or any portion thereof; (vi) they would threaten Plaintiff with legal collection action if he failed to pay for these unauthorized purchases; and (vii) that one or more of said Defendants owned a controlling interest, either individually or collectively, in the securities (either MWTX and/or STELLA BELLA stock) forced upon Plaintiff against his will. Plaintiff is informed and believes, and thereon alleges, that said Defendants suppressed this vital information with the intent to induce him into paying for said unauthorized purchases,

-44-

in the face of Defendants' knowledge of the true facts as set forth above, or of the high likelihood of such facts, which said Defendants had a duty to investigate, but failed to undertake.

91. Plaintiff is informed and believes, and thereon alleges, that the Defendants named in this Eleventh Claim, and each of them, by their affirmative misrepresentations and deliberate suppression of facts as set forth herein are liable to Plaintiff, pursuant to California Civil Code Section 1572(1) for intentional fraud; and pursuant to California Civil Code Section 1572(3) for intentional fraud by suppression of facts.

92. Plaintiff is further informed and believs, and thereon alleges, that in addition to their intentional fraud, the Defendants named in this Eleventh Claim, and each of them, also asserted as facts, affirmatively or by nondisclosure of the true facts, that (i) said investments would not be in "safe and secure" securities, but rather in highly volatile, closely-traded, and unpredictable securities; (ii) they would not honor Plaintiff's repeated requests to refrain from purchasing said securities in his name; (iii) they would not be truthful in their confirmations of Plaintiff's purported purchases of said securities; (iv) they would in fact fabricate phony written "confirmations" of orders that were never made or authorized by Plaintiff; (v) they would never honor any of Plaintiff's

-45-

repeated requests and/or demands to sell said securities or any portion thereof; (vi) they would threaten Plaintiff with legal collection action if he failed to pay for these unauthorized purchases; and (vii) that one or more of said Defendants owned a controlling interest, either individually or collectively, in the securities (either MWTX and/or STELLA BELLA stock) forced upon Plaintiff against his will. Such assertions were not warranted by the facts known to said Defendants, even if any or all of said Defendants believed such assertions to be true.

93.   Based on the assertions of the Defendants in this Eleventh Claim, and each of them, as set forth in Paragraph 92. above (and in greater detail in the introductory allegations herein), Plaintiff is informed and believes, and thereon alleges, that said Defendants are also liable to him under Section 1572(2) of the California Civil Code for negligent fraud.

94.   Plaintiff is informed and believes, and thereon alleges, that the Defendants named in this Eleventh Claim, and each of them, misled Plaintiff in the manner described hereinabove. As a result of said misleading statements, acts and omissions, Defendants gained an unfair advantage over Plaintiff, in that said Defendants reaped a windfall of at least $ 46,000.00, representing Plaintiff's entire investment, plus any additional profits realized by said Defendants which were not returned to Plaintiff.

-46-

95.   Based upon the allegations set forth in Paragraph 94. above (as set forth in detail in the introductory factual allegations herein), Plaintiff is informed and believs, and thereon alleges, that said Defendants are also liable to him under Section 1573 of the California Civil Code for constructive fraud.

96.   As a direct and proximate result of the acts of statutory fraud committed by the Defendants named in this Eleventh Claim, and each of them, Plaintiff was induced to part with his money, which has to this date never been returned by any of said Defendants to him, despite his repeated demands for same; causing Plaintiff damages for any and all harm resulting from said fraud, including but nor necessarily limited to:

a.   Plaintiff's loss of his entire principal investment with Defendant C & W, in the sum of Not Less Than Forty Six Thousand Dollars ( $ 46,000.00);

b.   Prejudgment interest at the legal rate of Ten Percent ( 10% ) per annum, from the date that Defendants first failed and refused to sell said securities (approximately June 1, 1994), which interest has accrued as of the date of this Complaint in the total current sum of not less than Eight Thousand Four Hundred Thirty-Three Dollars ( $ 8,433.00), subject to further increase until a final judgment is rendered herein; and

c.   Disgorgement of Plaintiff's pro-rata share of all

-47-

profits realized by said Defendants upon Plaintiff's money, in an amount to be proved at trial.

97. Plaintiff is informed and believes, and thereon alleges, that the Defendants named in this Eleventh Claim, and each of them, acted with fraud and oppression with respect to their intentional acts of fraud and concealment herein. Plaintiff is further informed and believes, and thereon alleges, that said Defendants so acted with knowledge of, and/or in reckless disregard of, the falsity of their representations and of the serious negative economic consequences that would befall Plaintiff as a result of such breaches and fraud. Such consequences included the loss by Plaintiff of his entire principal investment of over $ 46,000.00, and all consequential costs resulting to Plaintiff in being forced to file and prosecute the instant action. Such despicable conduct was carried on by the Defendants named in this Eleventh Claim, and each of them, in conscious disregard of the rights of Plaintiff, and subjected Plaintiff to unjust economic injury. Therefore, Plaintiff is entitled to an award of punitive/exemplary damages, in an amount according to proof.

TWELFTH CLAIM

DECEIT (CALIFORNIA CIVIL CODE SECTION 1710)

(Against all Defendants except FLETCHER & FARADAY and Z-3, and possible DOES)

98. Plaintiff herein realleges and incorporates by

-48-

reference the factual allegations contained in Paragraphs 1 through 31. as if fully set forth herein.

99.    Plaintiff is informed and believes, and thereon alleges, that the Defendants named in this Twelfth Claim, and each of them, as promoters, solicitors, brokers, agents, and sellers of the securities at issue herein, have a statutory duty, pursuant to Sections 1710 of the California Civil Code, to disclose all known material facts of which a buyer of securities is unaware, and not to make affirmative misrepresentations about said facts. Such duty applies to all such Defendants (and any of their agents and employees) involved in the transactions set forth herein, even where said parties merely lack sufficient knowledge to justify an affirmative statement about said securities or about their intentions respecting the use of Plaintiff's funds. Furthermore, said Defendants cannot avoid such statutory liability by asserting that the "buyer did not inquire"; and if said parties undertake to make any statement respecting the nature and safety of such securities, or of their handling of Plaintiff's funds therefor, said parties have an additional duty to conduct a reasonable and thorough investigation to ensure that such statements are in fact correct.

100. Plaintiff is informed and believes, and thereon alleges, that the Defendants named in this Twelfth Claim, and each of them, made affirmative misrepresentations about

-49-

the nature and security of Plaintiff's investments (including but not limited to a "risk factor" of only Ten Percent (10%) on the MWTX stock, which in reality was Ninety-Two Percent (92%)); as well as about their intentions respecting the disposition of Plaintiff's funds after Plaintiff paid said money to them; and also as to when, or even if, Plaintiff would ever be allowed to sell the stock that was purchased without his consent or authorization, despite his repeated requests and demands for such reimbursement to the present date, as set forth in detail in the factual allegations herein. Plaintiff is informed and believes, and thereon alleges,  that said Defendants, and each of them, made said representations with knowledge of their falsity, or strong reason to know of their falsity, and with the intent of inducing and coercing Plaintiff into paying for said unauthorized investment purchases herein.

101. Plaintiff is further informed and believes, and thereon alleges, that the Defendants named in this Twelfth Claim, and each of them, failed, at a minimum, to disclose the facts that (i) said investments would not be in "safe and secure" securities, but rather in highly volatile, closely-traded, and unpredictable securities; (ii) they would not honor Plaintiff's repeated requests to refrain from purchasing said securities in his name; (iii) they would not be truthful in their confirmations of Plaintiff's purported purchases of said securities; (iv) they would in

-50-

fact fabricate phony written "confirmations" of orders that were never made or authorized by Plaintiff; (v) they would never honor any of Plaintiff's repeated requests and/or demands to sell said securities or any portion thereof; (vi) they would threaten Plaintiff with legal collection action if he failed to pay for these unauthorized purchases; and (vii) that one or more of said Defendants owned a controlling interest, either individually or collectively, in the securities (either MWTX and/or STELLA BELLA stock) forced upon Plaintiff against his will. Plaintiff is informed and believes, and thereon alleges, that said Defendants suppressed this vital information with the intent to induce him into paying for said unauthorized purchases, in the face of Defendants' knowledge of the true facts as set forth above, or of the high likelihood of such facts, which said Defendants had a duty to investigate, but failed to undertake.

102. Plaintiff is informed and believes, and thereon alleges, that the Defendants named in this Twelfth Claim, and each of them, by their affirmative misrepresentations and deliberate suppression of facts as set forth herein are liable to Plaintiff, pursuant to California Civil Code Section 1710(1) for intentional deceit; and pursuant to California Civil Code Section 1710(3) for intentional deceit by suppression of facts.

103. Plaintiff is further informed and believes, and

-51-

thereon alleges, that in addition to their intentional fraud, the Defendants named in this Twelfth Claim, and each of them, also asserted as facts, affirmatively or by nondisclosure of the true facts, that (i) said investments would not be in "safe and secure" securities, but rather in highly volatile, closely-traded, and unpredictable securities; (ii) they would not honor Plaintiff's repeated requests to refrain from purchasing said securities in his name; (iii) they would not be truthful in their confirmations of Plaintiff's purported purchases of said securities; (iv) they would in fact fabricate phony written "confirmations" of orders that were never made or authorized by Plaintiff; (v) they would never honor any of Plaintiff's repeated requests and/or demands to sell said securities or any portion thereof; (vi) they would threaten Plaintiff with legal collection action if he failed to pay for these unauthorized purchases; and (vii) that one or more of said Defendants owned a controlling interest, either individually or collectively, in the securities (either MWTX and/or STELLA BELLA stock) forced upon Plaintiff against his will. Such assertions were not warranted by the facts known to said Defendants, even if any or all of said Defendants believed such assertions to be true.

104. Based on the assertions of the Defendants in this Twelfth Claim, and each of them, as set forth in Paragraph 102. above (and in greater detail in the introductory

-52-

allegations herein), Plaintiff is informed and believes, and thereon alleges, that said Defendants are also liable to him under Section 1710(2) of the California Civil Code for negligent deceit.

105. As a direct and proximate result of the acts of statutory fraud committed by the Defendants named in this Twelfth Claim, and each of them, Plaintiff was induced to part with his money, which has to this date never been returned by any of said Defendants to him, despite his repeated demands for same; causing Plaintiff damages for any and all harm resulting from said deceit, including but nor necessarily limited to:

a.    Plaintiff's loss of his entire principal investment with Defendant C & W, in the sum of Not Less Than Forty Six Thousand Dollars ( $ 46,000.00);

b.    Prejudgment interest at the legal rate of Ten Percent ( 10% ) per annum, from the date that Defendants first failed and refused to sell said securities (approximately June 1, 1994), which interest has accrued as of the date of this Complaint in the total current sum of not less than Eight Thousand Four Hundred Thirty-Three Dollars ( $ 8,433.00), subject to further increase until a final judgment is rendered herein; and

c.    Disgorgement of Plaintiff's pro-rata share of all profits realized by said Defendants upon Plaintiff's money, in an amount to be proved at trial.

-53-

106. Plaintiff is informed and believes, and thereon alleges, that the Defendants named in this Twelfth Claim, and each of them, acted with fraud and oppression with respect to their intentional acts of deceit and concealment herein. Plaintiff is further informed and believes, and thereon alleges, that said Defendants so acted with knowledge of, or in reckless disregard of, the falsity of their representations and of the serious negative economic consequences that would befall Plaintiff as a result of such breaches and fraud. Such consequences included the loss by Plaintiff of his entire principal investment of over $ 46,000.00, and all consequential costs resulting to Plaintiff in being forced to file and prosecute the instant action. Such despicable conduct was carried on by the Defendants named in this Twelfth Claim, and each of them, in conscious disregard of the rights of Plaintiff, and subjected Plaintiff to unjust economic injury. Therefore, Plaintiff is entitled to an award of punitive/exemplary damages, in an amount according to proof.

## THIRTEENTH CLAIM

## NEGLIGENT MISREPRESENTATION

## (Against all Defendants)

107. Plaintiff herein realleges and incorporates by reference the factual allegations contained in Paragraphs 1 through 31. as if fully set forth herein.

108. The Defendants named in this Thirteenth Claim, and

-54-

each of them (and their agents, servants, employees and other representatives) owed a duty of care to Plaintiff to accurately and fairly represent their ability and/or willingness to ensure that Plaintiff's interests would be accommodated and that his wishes would be accorded with respecting his orders (or lack thereof) to purchase and sell the investment interests at issue herein, for which he had paid earnest money in good faith to said Defendants; and to accurately and fairly apprise Plaintiff should he be in any danger of loss of said investments. Said duties were to be based on reasonable grounds for believing said representations to be true.

109. Plaintiff is informed and believes, and thereon alleges, that the Defendants named in this Thirteenth Claim, and each of them, breached their duties of care to him by making numerous affirmative misrepresentations (and concealing true facts from him) including but not limited to failing, at a minimum, to disclose the facts that (i) said investments would not be in "safe and secure" securities, but rather in highly volatile, closely-traded, and unpredictable securities; (ii) they would not honor Plaintiff's repeated requests to refrain from purchasing said securities in his name; (iii) they would not be truthful in their confirmations of Plaintiff's purported purchases of said securities; (iv) they would in fact fabricate phony written "confirmations" of orders that were

-55-

never made or authorized by Plaintiff; (v) they would never honor any of Plaintiff's repeated requests and/or demands to sell said securities or any portion thereof; (vi) they would threaten Plaintiff with legal collection action if he failed to pay for these unauthorized purchases; and (vii) that one or more of said Defendants owned a controlling interest, either individually or collectively, in the securities (either MWTX and/or STELLA BELLA stock) forced upon Plaintiff against his will.

110. Plaintiff is further informed and believes, and thereon alleges, that the Defendants in this Thirteenth Claim, and each of them, made these representations with no reasonable grounds for believing them to be true. Further, Plaintiff is informed and believes, and thereon alleges, that said Defendants were aware that without more accurate information concerning these facts, they could not possibly make these representations (either affirmatively or by concealment), and at all relevant times thereafter, they misrepresented these facts and their ability to make said representations accurately.

111. The aforementioned misrepresentations (including concealment and suppression of material facts) were made by the Defendants named in this Thirteenth Claim, and each of them, with the intent to induce Plaintiff to pay for said unauthorized purchases and to remain purportedly "bound" by said unauthorized transactions, even where, as here, said

-56-

Defendants were not honoring their promises and not following up on their assurances that Plaintiff would be able to promptly extricate himself from these unauthorized transactions by being permitted to sell said securities.

112. Plaintiff, at the time that these misrepresentations and concealments were undertaken by the Defendants in this Thirteenth Claim, was ignorant of the true facts and of the falsity of said representations, and believed them to be true. In justifiable reliance on such representations, and in ignorance of the material facts concealed by said Defendants, Plaintiff was induced to enter into (and to remain in) the aforementioned implied contractual relationship with said Defendants, and to pay in good faith to said Defendants monies for these unauthorized purchases of securities, which he apparently never received and could not sell, to his detriment.

113. As a direct and proximate result of such acts of negligent misrepresentation committed by the Defendants in this Thirteenth Claim, and each of them, Plaintiff has been damaged as follows:

a.    Plaintiff's loss of his entire principal investment with Defendant C & W, in the sum of Not Less Than Forty Six Thousand Dollars ( $ 46,000.00); and

b.    Prejudgment interest at the legal rate of Ten Percent ( 10% ) per annum, from the date that Defendants first failed and refused to sell said securities

-57-

(approximately June 1, 1994), which interest has accrued as of the date of this Complaint in the total current sum of not less than Eight Thousand Four Hundred Thirty-Three Dollars ( $ 8,433.00), subject to further increase until a final judgment is rendered herein.

## FOURTEENTH CLAIM

### NEGLIGENCE

### (Against all Defendants)

114. Plaintiff herein realleges and incorporates by reference the factual allegations contained in Paragraphs 1 through 31. as if fully set forth herein.

115. As fully set forth in the factual allegations contained herein, the Defendants in this Fourteenth Claim owed a duty of care, as securities brokers/agents, to act in a responsible and reasonable manner with respect to their client, Plaintiff herein, to accurately and fairly represent their ability and/or willingness to ensure that Plaintiff's interests would be accommodated and that his wishes would be accorded with respecting his orders (or lack thereof) to purchase and sell the investment interests at issue herein, for which he had paid earnest money in good faith to said Defendants; to competently handle said purchases and sales of securities in Plaintiff's name (including to ensure that all such transactions were authorized in advance by Plaintiff); and to accurately and fairly apprise Plaintiff

-58-

should he be in any danger of loss of said investments.

116. Plaintiff is informed and believes, and thereon alleges, that the Defendants in this Fourteenth Claim, and each of them, breached their duties of care to him by acts and omissions including but not necessarily limited to failing, at a minimum, to disclose the facts that (i) said investments would not be in "safe and secure" securities, but rather in highly volatile, closely-traded, and unpredictable securities; (ii) they would not honor Plaintiff's repeated requests to refrain from purchasing said securities in his name; (iii) they would not be truthful in their confirmations of Plaintiff's purported purchases of said securities; (iv) they would in fact fabricate phony written "confirmations" of orders that were never made or authorized by Plaintiff; (v) they would never honor any of Plaintiff's repeated requests and/or demands to sell said securities or any portion thereof; (vi) they would threaten Plaintiff with legal collection action if he failed to pay for these unauthorized purchases; and (vii) that one or more of said Defendants owned a controlling interest, either individually or collectively, in the securities (either MWTX and/or STELLA BELLA stock) forced upon Plaintiff against his will;  and further by failing to take any reasonable or adequate steps to ensure that any of said transactions were authorized by Plaintiff, or that Plaintiff's accounts, subsequent to the dates of said

-59-

unauthorized purchases, were handled expeditiously and properly and in accordance with Plaintiff's reasonable expectations and directions.

117. The acts and omissions of the Defendants in this Fourteenth Claim were all of a nature that would clearly and foreseeably cause substantial harm to Plaintiff herein.

118. As a direct and proximate result of the breaches of the duties of care of the Defendants to Plaintiff in this Fourteenth Claim, Plaintiff has been damaged in excess of any risks he could reasonably have avoided, had he known of such risks, as follows:

a.   Plaintiff's loss of his entire principal investment with Defendant C & W, in the sum of Not Less Than Forty Six Thousand Dollars ( $ 46,000.00); and

b.   Prejudgment interest at the legal rate of Ten Percent ( 10% ) per annum, from the date that Defendants first failed and refused to sell said securities (approximately June 1, 1994), which interest has accrued as of the date of this Complaint in the total current sum of not less than Eight Thousand Four Hundred Thirty-Three Dollars ( $ 8,433.00), subject to further increase until a final judgment is rendered herein.

////

////

////

////

-60-

## FIFTEENTH CLAIM

### BREACH OF FIDUCIARY DUTY

#### (Against all Defendants except FLETCHER & FARADAY and Z-3, and possible DOES)

119. Plaintiff herein realleges and incorporates by reference the factual allegations contained in Paragraphs 1 through 31. as if fully set forth herein.

120. Plaintiff is informed and believes, and thereon alleges, that the Defendants named in this Fifteenth Claim, and each of them, all of whom acted in some way to advise and/or counsel Plaintiff (a layperson with only limited, general knowledge of financial and investment transactions) in his investment decisions herein, thus stood in a special relationship of trust and confidence to Plaintiff. Thus, said Defendants, and each of them, owed a fiduciary duty to Plaintiff to act with due diligence and faithful service to preserve and protect Plaintiff's financial interests, and to make full and prompt disclosure of all material facts that might affect Plaintiff's decisions to invest his money with said Defendants. Such duties specifically included disclosure of all material facts concerning any ownership by Defendants of the stocks/securities said Defendants solicited Plaintiff to purchase; said facts concerning the safety and security of said investments; as well as all material facts concerning the ability and/or willingness of the Defendants herein to ensure that Plaintiff's interests

-61-

would be accommodated and that his wishes would be accorded with respecting his orders (or lack thereof) to purchase and sell the investment interests at issue herein, for which he had paid earnest money in good faith to said Defendants; and to accurately and fairly apprise Plaintiff should he be in any danger of loss of said investments.

121. Plaintiff is informed and believes, and thereon alleges, that the Defendants named in this Fifteenth Claim, and each of them breached their respective fiduciary duties to him by failing, at a minimum, to disclose the facts that (i) said investments would not be in "safe and secure" securities, but rather in highly volatile, closely-traded, and unpredictable securities; (ii) they would not honor Plaintiff's repeated requests to refrain from purchasing said securities in his name; (iii) they would not be truthful in their confirmations of Plaintiff's purported purchases of said securities; (iv) they would in fact fabricate phony written "confirmations" of orders that were never made or authorized by Plaintiff; (v) they would never honor any of Plaintiff's repeated requests and/or demands to sell said securities or any portion thereof; (vi) they would threaten Plaintiff with legal collection action if he failed to pay for these unauthorized purchases; and (vii) that one or more of said Defendants owned a controlling interest, either individually or collectively, in the securities (either MWTX and/or STELLA BELLA stock) forced upon

-62-

Plaintiff against his will;  and further by failing to take any reasonable or adequate steps to ensure that any of said transactions were authorized by Plaintiff, or that Plaintiff's accounts, subsequent to the dates of said unauthorized purchases, were handled expeditiously and properly and in accordance with Plaintiff's reasonable expectations and directions.

122. As a direct and proximate result of the breaches of fiduciary duty committed by the Defendants named in this Fifteenth Claim, and each of them, Plaintiff has been damaged as follows:

a. Plaintiff's loss of his entire principal investment with Defendant C & W, in the sum of Not Less Than Forty Six Thousand Dollars ( $ 46,000.00);

b. Prejudgment interest at the legal rate of Ten Percent ( 10% ) per annum, from the date that Defendants first failed and refused to sell said securities (approximately June 1, 1994), which interest has accrued as of the date of this Complaint in the total current sum of not less than Eight Thousand Four Hundred Thirty-Three Dollars ( $ 8,433.00), subject to further increase until a final judgment is rendered herein; and

c. Disgorgement of Plaintiff's pro-rata share of all profits realized by said Defendants upon Plaintiff's money, in an amount to be proved at trial.

123. Plaintiff is informed and believes, and thereon

-63-

alleges, that the Defendants named in this Fifteenth Claim, and each of them, acted with fraud and oppression with respect to their acts and omissions constituting their respective breaches of fiduciary duty herein. Plaintiff is further informed and believes, and thereon alleges, that said Defendants so acted with knowledge of, or in reckless disregard of, the falsity of their representations and of the serious negative economic consequences that would befall Plaintiff as a result of such breaches and fraud. Such consequences included the loss by Plaintiff of his entire principal investment of over $ 46,000.00, and all consequential costs resulting to Plaintiff in being forced to file and prosecute the instant action. Such despicable conduct was carried on by the Defendants named in this Twelfth Claim, and each of them, in conscious disregard of the rights of Plaintiff, and subjected Plaintiff to unjust economic injury. Therefore, Plaintiff is entitled to an award of punitive/exemplary damages, in an amount according to proof.

WHEREFORE, Plaintiff requests judgment against Defendants as follows:

**UPON THE FIRST CLAIM**

1.

2.

-64-

alleges, that the Defendants named in this Fifteenth Claim, and each of them, acted with fraud and oppression with respect to their acts and omissions constituting their respective breaches of fiduciary duty herein. Plaintiff is further informed and believes, and thereon alleges, that said Defendants so acted with knowledge of, or in reckless disregard of, the falsity of their representations and of the serious negative economic consequences that would befall Plaintiff as a result of such breaches and fraud. Such consequences included the loss by Plaintiff of his entire principal investment of over $ 46,000.00, and all consequential costs resulting to Plaintiff in being forced to file and prosecute the instant action. Such despicable conduct was carried on by the Defendants named in this Twelfth Claim, and each of them, in conscious disregard of the rights of Plaintiff, and subjected Plaintiff to unjust economic injury. Therefore, Plaintiff is entitled to an award of punitive/exemplary damages, in an amount according to proof.

WHEREFORE, Plaintiff requests judgment against Defendants as follows:

**UPON THE FIRST CLAIM**

1.    For restitution of all consideration paid by Plaintiff to Defendants for the purchase of the securities herein, plus profit/appreciation on his investments to the

date Plaintiff first ordered said securities sold, in the sum of not less than Forty Six Thousand Dollars ( $ 46,000.00);

2.    For prejudgment interest on the above at the legal rate of Ten Percent ( 10% ) per annum, from and after June 1, 1994, in the current sum of not less than Eight Thousand Four Hundred Thirty-Three Dollars ( $ 8,433.00), subject to further increase until a final judgment is rendered herein;

3.    For costs of suit herein incurred; and

4.    For such other and further relief as this Court may deem just and proper.

**UPON THE SECOND CLAIM**

1.    For restitution of all consideration paid by Plaintiff to Defendants for the purchase of the securities herein, plus profit/appreciation on his investments to the date Plaintiff first ordered said securities sold, in the sum of not less than Forty Six Thousand Dollars ( $ 46,000.00);

2.    For prejudgment interest on the above at the legal rate of Ten Percent ( 10% ) per annum, from and after June 1, 1994, in the current sum of not less than Eight Thousand Four Hundred Thirty-Three Dollars ( $ 8,433.00), subject to further increase until a final judgment is rendered herein;

3. Awarding Plaintiff reasonable attorneys' fees incurred in order to prosecute this action, in the current amount of not less than Two Thousand Five Hundred Dollars ( $ 2,500.00), which amount will increase until a final judgment is rendered herein, in an additional amount according to proof;

4. For costs of suit herein incurred; and

5. For such other and further relief as this Court may deem just and proper.

**UPON THE THIRD CLAIM**

1. For restitution of all consideration paid by Plaintiff to Defendants for the purchase of the securities herein, plus profit/appreciation on his investments to the date Plaintiff first ordered said securities sold, in the sum of not less than Forty Six Thousand Dollars ( $ 46,000.00);

2. For prejudgment interest on the above at the legal rate of Ten Percent ( 10% ) per annum, from and after June 1, 1994, in the current sum of not less than Eight Thousand Four Hundred Thirty-Three Dollars ( $ 8,433.00), subject to further increase until a final judgment is rendered herein;

3. Awarding Plaintiff reasonable attorneys' fees incurred in order to prosecute this action, in the current amount of not less than Two Thousand Five Hundred Dollars ( $ 2,500.00), which amount will increase until a final

-66-

judgment is rendered herein, in an additional amount according to proof;

4.   For punitive/exemplary damages in the sum of not less than Five Hundred Thousand Dollars ( $ 500,000.00), or in a greater amount according to proof;

5.   For costs of suit herein incurred; and

6.   For such other and further relief as this Court may deem just and proper.

**UPON THE FOURTH CLAIM**

1.   For restitution of all consideration paid by Plaintiff to Defendants for the purchase of the securities herein, plus profit/appreciation on his investments to the date Plaintiff first ordered said securities sold, in the sum of not less than Forty Six Thousand Dollars ( $ 46,000.00);

2.   For prejudgment interest on the above at the legal rate of Ten Percent ( 10% ) per annum, from and after June 1, 1994, in the current sum of not less than Eight Thousand Four Hundred Thirty-Three Dollars ( $ 8,433.00), subject to further increase until a final judgment is rendered herein;

3.   For costs of suit herein incurred; and

4.   For such other and further relief as this Court may deem just and proper.

////

////

-67-

**UPON THE FIFTH CLAIM**

1. For restitution of all consideration paid by Plaintiff to Defendants for the purchase of the securities herein, plus profit/appreciation on his investments to the date Plaintiff first ordered said securities sold, in the sum of not less than Forty Six Thousand Dollars ( $ 46,000.00);

2. For prejudgment interest on the above at the legal rate of Ten Percent ( 10% ) per annum, from and after June 1, 1994, in the current sum of not less than Eight Thousand Four Hundred Thirty-Three Dollars ( $ 8,433.00), subject to further increase until a final judgment is rendered herein;

3. For costs of suit herein incurred; and

4. For such other and further relief as this Court may deem just and proper.

**UPON THE SIXTH CLAIM**

1. For restitution of all consideration paid by Plaintiff to Defendants for the purchase of the securities herein, plus profit/appreciation on his investments to the date Plaintiff first ordered said securities sold, in the sum of not less than Forty Six Thousand Dollars ( $ 46,000.00);

2. For prejudgment interest on the above at the legal rate of Ten Percent ( 10% ) per annum, from and after June 1, 1994, in the current sum of not less than Eight

-68-

Thousand Four Hundred Thirty-Three Dollars ( $ 8,433.00), subject to further increase until a final judgment is rendered herein;

    3.    For punitive/exemplary damages in an amount according to proof;

    4.    For costs of suit herein incurred; and

    5.    For such other and further relief as this Court may deem just and proper.

**UPON THE SEVENTH CLAIM**

    1.    For restitution of all consideration paid by Plaintiff to Defendants for the purchase of the securities herein, plus profit/appreciation on his investments to the date Plaintiff first ordered said securities sold, in the sum of not less than Forty Six Thousand Dollars ( $ 46,000.00);

    2.    For prejudgment interest on the above at the legal rate of Ten Percent ( 10% ) per annum, from and after June 1, 1994, in the current sum of not less than Eight Thousand Four Hundred Thirty-Three Dollars ( $ 8,433.00), subject to further increase until a final judgment is rendered herein;

    3.    For costs of suit herein incurred; and

    4.    For such other and further relief as this Court may deem just and proper.

**UPON THE EIGHTH CLAIM**

    1.    For restitution of all consideration paid by

-69-

Plaintiff to Defendants for the purchase of the securities herein, plus profit/appreciation on his investments to the date Plaintiff first ordered said securities sold, in the sum of not less than Forty Six Thousand Dollars ( $ 46,000.00);

2.   For prejudgment interest on the above at the legal rate of Ten Percent ( 10% ) per annum, from and after June 1, 1994, in the current sum of not less than Eight Thousand Four Hundred Thirty-Three Dollars ( $ 8,433.00), subject to further increase until a final judgment is rendered herein;

3.   For costs of suit herein incurred; and

4.   For such other and further relief as this Court may deem just and proper.

**UPON THE NINTH CLAIM**

1.   For restitution of all consideration paid by Plaintiff to Defendants for the purchase of the securities herein, plus profit/appreciation on his investments to the date Plaintiff first ordered said securities sold, in the sum of not less than Forty Six Thousand Dollars ( $ 46,000.00);

2.   For prejudgment interest on the above at the legal rate of Ten Percent ( 10% ) per annum, from and after June 1, 1994, in the current sum of not less than Eight Thousand Four Hundred Thirty-Three Dollars ( $ 8,433.00), subject to further increase until a final judgment is

rendered herein;

3.    For general damages for emotional distress in an amount according to proof;

4.    For punitive/exemplary damages in an amount according to proof;

5.    For costs of suit herein incurred; and

6.    For such other and further relief as this Court may deem just and proper.

**UPON THE TENTH CLAIM**

1.    For restitution of all consideration paid by Plaintiff to Defendants for the purchase of the securities herein, plus profit/appreciation on his investments to the date Plaintiff first ordered said securities sold, in the sum of not less than Forty Six Thousand Dollars ( $ 46,000.00);

2.    For prejudgment interest on the above at the legal rate of Ten Percent ( 10% ) per annum, from and after June 1, 1994, in the current sum of not less than Eight Thousand Four Hundred Thirty-Three Dollars ( $ 8,433.00), subject to further increase until a final judgment is rendered herein;

3.    For costs of suit herein incurred; and

4.    For such other and further relief as this Court may deem just and proper.

**UPON THE ELEVENTH CLAIM**

1.    For restitution of all consideration paid by

Plaintiff to Defendants for the purchase of the securities herein, plus profit/appreciation on his investments to the date Plaintiff first ordered said securities sold, in the sum of not less than Forty Six Thousand Dollars ( $ 46,000.00);

2.    For prejudgment interest on the above at the legal rate of Ten Percent ( 10% ) per annum, from and after June 1, 1994, in the current sum of not less than Eight Thousand Four Hundred Thirty-Three Dollars ( $ 8,433.00), subject to further increase until a final judgment is rendered herein;

3.    For disgorgement of Plaintiff's pro-rate share of any additional profits realized by Defendants on Plaintiff's money, in an amount according to proof;

4.    For punitive/exemplary damages in an amount according to proof;

5.    For costs of suit herein incurred; and

6.    For such other and further relief as this Court may deem just and proper.

**UPON THE TWELFTH CLAIM**

1.    For restitution of all consideration paid by Plaintiff to Defendants for the purchase of the securities herein, plus profit/appreciation on his investments to the date Plaintiff first ordered said securities sold, in the sum of not less than Forty Six Thousand Dollars ( $ 46,000.00);

-72-

2.   For prejudgment interest on the above at the legal rate of Ten Percent ( 10% ) per annum, from and after June 1, 1994, in the current sum of not less than Eight Thousand Four Hundred Thirty-Three Dollars ( $ 8,433.00), subject to further increase until a final judgment is rendered herein;

3.   For disgorgement of Plaintiff's pro-rate share of any additional profits realized by Defendants on Plaintiff's money, in an amount according to proof;

4.   For punitive/exemplary damages in an amount according to proof;

5.   For costs of suit herein incurred; and

6.   For such other and further relief as this Court may deem just and proper.

**UPON THE THIRTEENTH CLAIM**

1.   For restitution of all consideration paid by Plaintiff to Defendants for the purchase of the securities herein, plus profit/appreciation on his investments to the date Plaintiff first ordered said securities sold, in the sum of not less than Forty Six Thousand Dollars ( $ 46,000.00);

2.   For prejudgment interest on the above at the legal rate of Ten Percent ( 10% ) per annum, from and after June 1, 1994, in the current sum of not less than Eight Thousand Four Hundred Thirty-Three Dollars ( $ 8,433.00), subject to further increase until a final judgment is

-73-

rendered herein;

    3.    For costs of suit herein incurred; and

    4.    For such other and further relief as this Court may deem just and proper.

**UPON THE FOURTEENTH CLAIM**

    1.    For restitution of all consideration paid by Plaintiff to Defendants for the purchase of the securities herein, plus profit/appreciation on his investments to the date Plaintiff first ordered said securities sold, in the sum of not less than Forty Six Thousand Dollars ( $ 46,000.00);

    2.    For prejudgment interest on the above at the legal rate of Ten Percent ( 10% ) per annum, from and after June 1, 1994, in the current sum of not less than Eight Thousand Four Hundred Thirty-Three Dollars ( $ 8,433.00), subject to further increase until a final judgment is rendered herein;

    3.    For costs of suit herein incurred; and

    4.    For such other and further relief as this Court may deem just and proper.

**UPON THE FIFTEENTH CLAIM**

    1.    For restitution of all consideration paid by Plaintiff to Defendants for the purchase of the securities herein, plus profit/appreciation on his investments to the date Plaintiff first ordered said securities sold, in the sum of not less than Forty Six Thousand Dollars

( $ 46,000.00);

2.    For prejudgment interest on the above at the legal rate of Ten Percent ( 10% ) per annum, from and after June 1, 1994, in the current sum of not less than Eight Thousand Four Hundred Thirty-Three Dollars ( $ 8,433.00), subject to further increase until a final judgment is rendered herein;

3.    For disgorgement of Plaintiff's pro-rate share of any additional profits realized by Defendants on Plaintiff's money, in an amount according to proof;

4.    For punitive/exemplary damages in an amount according to proof;

5.    For costs of suit herein incurred; and

6.    For such other and further relief as this Court may deem just and proper.

DATED: 4-4-96

HOWARD BENNETT HELLEN,
ATTORNEY AT LAW

By: _____
Howard Bennett Hellen
Attorney for Plaintiff,
ORIEN E. TULP

-75-

CARTWRIGHT & WALKER SECS INC
1800 CENTURY PARK EAST, # 1150
LOS ANGELES CA 90067

## STATEMENT OF ACCOUNT

| ACCOUNT NUMBER | TAXPAYER ID | PERIOD |
|---|---|---|
| 01818848 | 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 | 07/29/94 |

| ACCT REP: FR01 SCOVILLE WALKER |
|---|

ACCOUNT CARRIED BY
EMMETT A. LARKIN COMPANY, INC.

ORIEN TULP
8500 LINDBERG AVE #1606
PHILADELPHIA PA 19153

PAGE    2

## POSITIONS IN YOUR ACCOUNT

| ACCT | LONG | SHORT | DESCRIPTION | PRICE | MARKET VALUE |
|---|---|---|---|---|---|
| CSH | 7,550 | | METRO WIRELESS INTERACTIVE CRP | 4 1/4 | 32,087.50. |
| | | | TOTAL MARKET VALUE | | 32,087.50CR |
| | | | TOTAL EQUITY | | 32,087.50CR |

**********

END OF STATEMENT

EXHIBIT "A" Page 1 of 5

CARTWRIGHT & WALKER SECS INC
1800 CENTURY PARK EAST, # 1150
LOS ANGELES CA 90067

## STATEMENT OF ACCOUNT

| ACCOUNT NUMBER | TAXPAYER ID | PERIOD |
|---|---|---|
| 01818848 | 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 | 07/29/94 |

ACCT REP: FR01 SCOVILLE WALKER

ACCOUNT CARRIED BY
EMMETT A. LARKIN COMPANY, INC.

ORIEN TULP
8500 LINDBERG AVE #1606
PHILADELPHIA PA 19153

PAGE    1

## DIVIDENDS AND INTEREST        ACCOUNT BALANCES

| | YEAR-TO-DATE | ACCOUNT TYPE | OPENING | CLOSING |
|---|---|---|---|---|
| CREDIT INTEREST: | 41.41 | 1 - CASH | 9,958.66DB | .00CR |
| | | TOTAL BALANCE | 9,958.66DB | .00 |
| | | TOTAL EQUITY | | 32,087.50CR |

## ACTIVITY THIS MONTH

| TYPE | DATE | TRANSACTION | QUANTITY | DESCRIPTION | PRICE | DEBIT | CREDIT |
|---|---|---|---|---|---|---|---|
| | | | | ** ACCOUNT TYPE 1 - CASH | | | |
| | | | | OPENING CASH ACCT BALANCE | | 9,958.66 | |
| CSH | 06/29 | CANCELS BUY | 5050 | METRO WIRELESS INTERACTIVE CRP | 4 | | 20,603.00 |
| CSH | 06/29 | YOU BOUGHT | 2600 | METRO WIRELESS INTERACTIVE CRP | 4 | 10,803.00 | |
| CSH | 07/07 | JOURNAL | | WRITE-OFF TO FR01 | | | 158.66 |
| | | | | CLOSING CASH ACCT BALANCE | | | .00 |

EXHIBIT "A" Page 2  of 5

*Quoted 5¼/5½ ... 9/30/94 by Elliet Fish during visit to his office.*

## STATEMENT INFORMATION

EMMETT A. LARKIN CO., INC. CARRIES YOUR ACCOUNT AND ACTS AS YOUR CUSTODIAN FOR FUNDS AND SECURITIES DEPOSITED BY YOU, THROUGH YOUR INTRODUCING FIRM OR AS A RESULT OF TRANSACTIONS WE PROCESS FOR YOUR ACCOUNT. INQUIRIES CONCERNING THE POSITIONS AND BALANCES IN YOUR ACCOUNT MAY BE DIRECTED TO OUR CUSTOMER SERVICE REPRESENTATIVE: #(415) 986-2332. ALL OTHER INQUIRIES REGARDING YOUR ACCOUNT AND ACTIVITY THEREIN SHOULD BE DIRECTED TO YOUR INTRODUCING FIRM OR REGISTERED REPRESENTATIVE.

IMPORTANT: CASH RECEIVED OR PAID AND SECURITIES RECEIVED OR DELIVERED ARE SHOWN AS OF THE DATE OF SUCH TRANSACTIONS, PURCHASES AND SALES OF SECURITIES HOWEVER ARE SHOWN AS OF THE CONTRACT SETTLEMENT DATE WHICH IS NORMALLY THE FIFTH FULL BUSINESS DAY AFTER THE DATE OF EXECUTION. BECAUSE OF THIS, PURCHASES AND SALES MADE NEAR THE DATE OF THIS STATEMENT MAY NOT APPEAR HEREON EVEN THOUGH CASH OR DELIVERY ENTRIES ON THE SAME TRANSACTION MAY BE SHOWN. THE NEXT STATEMENT YOU RECEIVE WILL COMPLETE THE RECORD IN SUCH INSTANCES.

IF THIS IS A MARGIN ACCOUNT, THIS IS A COMBINED STATEMENT OF YOUR GENERAL ACCOUNT AND OF A SPECIAL MISCELLANEOUS ACCOUNT MAINTAINED FOR YOU UNDER SECTION 4 (F) (6) OF REGULATION T ISSUED BY THE BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM. THE PERMANENT RECORD OF THE SEPARATE ACCOUNT AS REQUIRED BY REGULATION T IS AVAILABLE FOR YOUR INSPECTION UPON REQUEST.

INFORMATION WITH RESPECT TO COMMISSIONS AND OTHER CHARGES INCURRED IN CONNECTION WITH THE EXECUTION OF OPTION TRANSACTIONS HAS BEEN INCLUDED IN CONFIRMATIONS OF THESE TRANSACTIONS PREVIOUSLY FURNISHED TO YOU. A SUMMARY OF THIS INFORMATION IS AVAILABLE UPON REQUEST.

IF OPTIONS ARE TRADED IN THIS ACCOUNT, IT IS THE CUSTOMER'S RESPONSIBILITY TO INFORM THE BROKERAGE FIRM OF ANY CHANGE IN INVESTMENT OBJECTIVES OR FINANCIAL SITUATION.

ANY FREE CREDIT BALANCE REPRESENTS FUNDS PAYABLE UPON DEMAND WHICH ALTHOUGH PROPERLY ACCOUNTED FOR ON OUR BOOKS OF RECORD ARE NOT SEGREGATED AND MAY BE USED IN THE CONDUCT OF THIS FIRM'S BUSINESS.

CASH DIVIDENDS, ALTHOUGH CREDITED TO AN ACCOUNT DURING THE MONTH, MAY BE DISBURSED ON A MONTHLY BASIS OR AT THE DISCRETION OF THE CUSTOMER.

A FINANCIAL STATEMENT OF THIS FIRM IS AVAILABLE FOR YOUR PERSONAL INSPECTION AT ITS OFFICES OR A COPY OF IT WILL BE MAILED UPON YOUR WRITTEN REQUEST.

IF THIS STATEMENT CONTAINS AN ESTIMATED VALUE, YOU SHOULD BE AWARE THAT THIS VALUE MAY BE BASED ON A LIMITED NUMBER OF TRADES OR QUOTES. THEREFORE, YOU MAY NOT BE ABLE TO SELL THESE SECURITIES AT A PRICE EQUAL OR NEAR TO THE VALUE SHOWN, HOWEVER, THE BROKER-DEALER FURNISHING THIS STATEMENT MAY NOT REFUSE TO ACCEPT YOUR ORDER TO SELL THESE SECURITIES. ALSO, THE AMOUNT YOU RECEIVE FROM A SALE GENERALLY WILL BE REDUCED BY THE AMOUNT OF ANY COMMISSIONS OR SIMILAR CHARGES. IF AN ESTIMATED VALUE IS NOT SHOWN FOR A SECURITY, A VALUE COULD NOT BE DETERMINED BECAUSE OF A LACK OF INFORMATION.

E & OE - ERRORS AND OMISSIONS EXEMPT.

### TYPE OF ACCOUNT
0. DVP ACCOUNT
1. CASH ACCOUNT
2. MARGIN ACCOUNT
3. SHORT ACCOUNT
4. CLEARANCE ACCOUNT
E. ESCROW ACCOUNT

EXHIBIT "A" Page 3 of 5

35014V

CARTWRIGHT & WALKER SECS INC
1800 CENTURY PARK EAST, # 1150
LOS ANGELES CA 90067

## STATEMENT OF ACCOUNT

| ACCOUNT NUMBER | TAXPAYER ID | PERIOD |
|---|---|---|
| 01818848 | 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 | 09/30/94 |

ACCT REP: FRO1 SCOVILLE WALKER

ACCOUNT CARRIED BY
EMMETT A. LARKIN COMPANY, INC.

ORIEN TULP
8500 LINDBERG AVE #1606
PHILADELPHIA PA 19153

PAGE    1

## DIVIDENDS AND INTEREST            ACCOUNT BALANCES

| | YEAR-TO-DATE | ACCOUNT TYPE | OPENING | CLOSING |
|---|---|---|---|---|
| CREDIT INTEREST: | 41.41 | | | |
| | | TOTAL BALANCE | .00 | .00 |
| | | TOTAL EQUITY | | 30,200.00CR |

## POSITIONS IN YOUR ACCOUNT

| ACCT | LONG | SHORT | DESCRIPTION | PRICE | MARKET VALUE |
|---|---|---|---|---|---|
| CSH | 7,550 | | METRO WIRELESS INTERACTIVE CRP | 4 | 30,200.00 |
| | | | TOTAL MARKET VALUE | | 30,200.00CR |
| | | | TOTAL EQUITY | | 30,200.00CR |

**********

END OF STATEMENT

EXHIBIT "A" Page 4 of 5

```
INQSRA   SP            PHASE3 INQUIRY:  SECURITY POSITIONS        09/30 16:29
                             FILTER  C        ACCT  01818848            FR01
ORIEN TULP                                PHONE#      -    -
                                          PHONE#      -    -
                                              MM BAL
     CSH TDBAL                        ,   CSH SDBAL
     MGN TDBAL                            MGN SDBAL
T    PRICE    T/D QTY                                              LOCATION
1    4.0000       7550     METRO WIRELESS INTERACTIVE CRP          7550    S
                                      59164K103
```

```
ACCOUNT AT END: NO MORE POSITIONS
Alt-Z FOR HELP| VT100     | FDX |  9600 E71 | LOG CLOSED | PRINT OFF | ON-LINE
```

EXHIBIT "A" Page 5 of 5

JS 44
(Rev. 07/89)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| ORIEN L. TULP | CARTWRIGHT & WALKER SECURITIES, INC., A California Corporation, et al |

**FILED**

APR 8 1996

CLK, U.S. DISTRICT COURT

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF __DELAWARE, PA__
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT SAN DIEGO, CA
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
(619)528-2330
Howard Bennett Hellen
Attorney at Law
3111 Camino Del Rio North, Ste.400
San Diego, CA 92108

ATTORNEYS (IF KNOWN)

'96 - 629 J RBB

## II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐1 | ☐1 | Incorporated or Principal Place of Business in This State | ☐4 | ☐4 |
| Citizen of Another State | ☐2 | ☐2 | Incorporated and Principal Place of Business in Another State | ☐5 | ☐5 |
| Citizen or Subject of a Foreign Country | ☐3 | ☐3 | Foreign Nation | ☐6 | ☐6 |

## IV. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

Securities Fraud under Sections 5 & 12(1) of the Securities Act of 1933; Section 12(2) of the Securities Act of 1933; Sections 17(a) of the Securities Act of 1933; Sections 10(b) & 10(b)(5) of the Securities Act of 1934

## V. NATURE OF SUIT (PLACE AN x IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— Med Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury— Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | | ☐ 650 Airline Regs | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 690 Other | **SOCIAL SECURITY** | ☒ 850 Securities/Commodities/ Exchange |
| | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | Habeas Corpus: | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS—Third Party 26 USC 7609 | |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |

## VI. ORIGIN (PLACE AN x IN ONE BOX ONLY)

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify)   ☐ 6 Multidistrict Litigation   ☐ 7 Appeal to District Judge from Magistrate Judgment

## VII. REQUESTED IN COMPLAINT:

CHECK IF THIS IS A **CLASS ACTION**
☐ UNDER F.R.C.P. 23

DEMAND $

Check YES only if demanded in complaint:
JURY DEMAND: ☒ YES   ☐ NO

## VIII. RELATED CASE(S) IF ANY (See instructions):

JUDGE _____   DOCKET NUMBER _____

DATE 4/5/96

SIGNATURE OF ATTORNEY OF RECORD _____